MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 1
Docket:       Ken-16-32
Argued:       October 25, 2016
Decided:      January 5, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## CONSERVATORSHIP OF EMMA

SAUFLEY, C.J.

[¶1]  The Kennebec County Probate Court (*J. Mitchell, J.*) has reported a question to us that concerns public access to information held by probate courts in electronic format, specifically, financial information in conservatorship matters.  Because we conclude that the reported question (1) raises broad issues that extend beyond the controversy at hand, (2) requests decisions that are inconsistent with our basic function as an appellate court, and (3) may be rendered moot by subsequent proceedings, we decline to answer the reported question.

## I.  BACKGROUND

[¶2]  In February 2011, Emma's husband petitioned to be appointed as her guardian and conservator in the Kennebec County Probate Court.[1]  He

---

[1] We granted the current conservator's motion to de-identify the protected person in this matter and have provided the pseudonym "Emma."

amended his petition, with leave of the court, to seek the appointment of an attorney as Emma's guardian and himself as the conservator of her estate. As conservator, he filed an inventory and accounts identifying the approximate value of the estate's assets. *See* 18-A M.R.S. §§ 5-418, 5-419 (2015).

[¶3] Emma's husband died in February 2014, and her son successfully petitioned to be appointed as the new conservator. With his petition, Emma's son filed an updated inventory of the estate's assets indicating an increase in the value of the estate. After being appointed as the estate's conservator in October 2014, the son filed an amended inventory.

[¶4] In August 2015, Emma's son, as conservator, moved to have financial details regarding the value of the estate removed from the publicly available docket in the case, pursuant to M.R. Prob. P. 92.12. The court summarily denied the motion. The conservator moved for the court to reconsider and to amend the judgment pursuant to M.R. Prob. P. 59 and M.R. Civ. P. 59. The conservator focused in this motion on limiting the availability of the inventory and account information on the Probate Court's public website. After a hearing, the court indicated that it would consider whether to report a question to us pursuant to M.R. App. P. 24(a).

[¶5]   While the court had the matter under consideration, the conservator filed a request for the financial information to be removed from the public docket as an accommodation pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.S. §§ 12101-12213 (LEXIS through Pub. L. No. 114-248), based on his argument that persons without the kinds of disabilities that invoke probate court jurisdiction are not subject to public disclosure of that information.   Two days later, the court reported to us the following question:

> When a conservator files an inventory and account for the ward, a. should the image of the documents be available on line; b. should the summary numbers from the documents be available on line while the document images remain as publicly available only in the court (current practice in Kennebec); c. should neither the image of the document nor any summary numbers be available on line (current practice in fourteen counties); or d. should the Probate Court adopt a policy different from a, b, or c above?

The court made clear that, despite the request for ADA accommodation, "[t]hat does not appear to be a recurring type of request and no certification of that question is implied."  The court entered a separate ruling on the request for ADA accommodation, however, stating that it had "certified a similar issue to the Law Court," and that "[p]ending the result of that certification, but without deciding the issue finally, the Court will accommodate [the

4

conservator] by removing from the docket, as available on line, the summary numbers from the inventory and account he has filed for [Emma]."

## II. DISCUSSION

[¶6] By rule, a court "may, where all parties appearing so agree, report any action in the trial court to the Law Court if it is of the opinion that any question of law presented is of sufficient importance or doubt to justify the report, provided that the decision thereof would in at least one alternative finally dispose of the action." M.R. App. P. 24(a). A properly reported action "shall be entered in the Law Court and heard and determined in the manner provided in case of appeals, with the plaintiff or the party aggrieved by a reported interlocutory ruling being treated as the appellant." M.R. App. P. 24(d).

[¶7] Because Rule 24 exists as an exception to the final judgment rule, *see Littlebrook Airpark Condo. Ass'n v. Sweet Peas, LLC*, 2013 ME 89, ¶ 10, 81 A.3d 348, we begin by determining whether it is appropriate to accept the reported question for response. "When the trial court reports questions for review, we independently determine whether acceptance of the report is consistent with our basic function as an appellate court, or would improperly place us in the role of an advisory board." *Id.* ¶ 9 (quotation marks omitted).

"In making this determination, we consider the following factors: (1) whether the question reported is of sufficient importance and doubt to outweigh the policy against piecemeal litigation; (2) whether the question might not have to be decided because of other possible dispositions; and (3) whether a decision on the issue would, in at least one alternative, dispose of the action."  *Id.* (quotation marks omitted).

[¶8]  The first factor, in essence, asks whether the issue presented is sufficiently significant to outweigh the purposes served by the final judgment rule.  *Id.* ¶ 10.  The second factor addresses the possibility of other rulings rendering the question moot.  *Id.* ¶ 12.  If there exist alternative grounds that could result in a final disposition, we are unlikely to accept the question.  *See id.*  The third factor asks whether at least one possible answer to the reported question would finally resolve the dispute.  *Id.* ¶ 13.

[¶9]  Regarding the first factor, the Probate Court has reported a significant and important question concerning the availability of court records and docket information in electronic format.  Across the country, state and local courts are reviewing and amending rules addressing the shift from paper to electronic filing and file storage.  *See generally* Hon. Paul H. Anderson, *Future Trends in Public Access: Court Information, Privacy and Technology*, in

6

Future Trends in State Courts 10-11, 14-16 (National Center for State Courts ed. 2011); *see, e.g.*, Vt. Pub. Acc. Ct. Rec. R. 1-8.  The question submitted here concerns important public policy matters generated by the decisions of Maine's probate judges to modernize probate records by making certain court records and docket information available to the public in electronic format, rather than confining public access to paper files and docket records housed at particular courthouses.

[¶10]  Although the question is important, and addresses significant matters of interest to the public, it is truly a question of policy, with long-ranging and far-reaching implications.  The issues raised by the question do not lend themselves to an adjudicatory response.  Rather, they should be answered through rulemaking where the myriad questions regarding the treatment of digital records can be addressed together in an open forum. Unfortunately, no rulemaking or statutory amendments concerning privacy and transparency issues were proposed or enacted before the digitization of probate records, leaving many weighty questions, including those which the Kennebec County Probate Court has reported to us, unanswered.

[¶11]  The second factor also militates strongly against our ruling on the question reported to us.  The entire issue raised with respect to the Estate

may be moot because the court may continue to preclude public access to the docketed financial information about Emma's estate based on the ADA, an independent legal authority. Such a ruling could obviate the need for any opinion from us or could, if properly presented in an appeal from a final determination, require us to address additional legal issues.

[¶12] Regarding the third factor, the broad question presented could, in at least one alternative, resolve the finite dispute about the display of Emma's estate's financial information in the docket entries publicly available on the Internet. It would not, however, resolve any substantive disputes regarding the accounting or other matters related to the estate, and would not finally resolve all issues arising from the conservator's initial request, which asked the court to limit the inclusion of financial information in all docket entries, whether or not available on the Internet. In sum, an answer to the question propounded by the Probate Court will not have an impact on the substantive proceeding before the court and should not be addressed unless a final judgment has been entered.

[¶13] Accordingly, we decline to answer the Kennebec County Probate Court's question seeking an advisory opinion on matters that reach far beyond the controversy presented in the matter at hand. We cannot undertake de

facto rulemaking—without public notice and a full opportunity for public comment—by responding to a reported question that seeks an advisory opinion in a matter that may well be resolved on a separate legal basis. Rulemaking or statutory action on such policy questions would have provided, and still may provide, the broader guidance that is sought in the Probate Court's question.

[¶14]  Because the reported question may not be answered consistent with our basic function as an appellate court and instead seeks an advisory opinion on an issue that may be rendered moot by subsequent decision-making, we discharge the reported question.

The entry is:

> Report discharged.

---

Patrice A. Putman, Esq., Levey, Wagley & Putman, P.A., Winthrop, and Zachary L. Heiden, Esq. (orally), American Civil Liberties Union of Maine Foundation, Portland, for appellant conservator of Emma

Sigmund D. Schutz, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellee Maine Freedom of Information Coalition

Kennebec County Probate Court docket number 2011-0102-2
FOR CLERK REFERENCE ONLY