MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 52
Docket:       Ken-18-130
Argued:       April 12, 2018
Decided:      April 17, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

MAINE SENATE

v.

SECRETARY OF STATE et al.

PER CURIAM

[¶1]  The Superior Court (Kennebec County, *Murphy, J.*) has reported seven questions to us pursuant to M.R. App. P. 24(a), addressing the Secretary of State's planned implementation of ranked-choice voting in Maine's primary elections scheduled for June 12, 2018.[1]  The first three questions are substantive, and the remaining questions address the justiciability of those first three questions.  This opinion focuses only on the June 2018 primary election; it does not address any other potential application of ranked-choice voting in Maine.

---

[1] The Committee for Ranked-Choice Voting, along with prospective congressional, legislative, and gubernatorial candidates Lucas St. Clair, Mark Eves, Diane Russell, Betsy Sweet, and Ben Chipman, intervened in the matter in the Superior Court. *See* M.R. Civ. P. 24.

2

[¶2] We accept the Report, answer Question 3 on its merits, conclude that the other questions raise nonjusticiable issues, and remand the matter to the Superior Court for entry of a final judgment. In summary:

(1) We assume, without deciding, that the Maine Senate, a single body of the bicameral Maine Legislature, has standing to seek a declaration regarding the legal status of ranked-choice voting in the June 2018 primary elections and to challenge in court the operational planning of the Secretary of State, who is a constitutional officer;

(2) We answer Reported Question 3 and determine that ranked-choice voting is the current statutory law of Maine for the primary elections to be held on June 12, 2018;

(3) We determine that Reported Questions 1 and 2, which ask the Court to act in contravention to the constitutional provision respecting the separation of powers of the three independent Branches of government, are not justiciable; and

(4) We determine that the remaining questions are moot.

## I. BACKGROUND

[¶3]  The history of ranked-choice voting in Maine to date could provide the substance of an entire civics course on the creation of statutory law in the State of Maine.  We provide the highlights here.

[¶4]  In 2016, the people of Maine enacted citizen-initiated legislation to implement ranked-choice voting for general and primary elections occurring on or after January 1, 2018, for the offices of United States Senator and Representative, State Senator and Representative, and Governor.[2]  L.D. 1557, §§ 1-6 (referred to the voters, 127th Legis. 2016) (effective Jan. 7, 2017) (codified at 21-A M.R.S. §§ 1(27-C), 1(35-A), 601(2)(J), 722(1), 723-A (2017)); *see* Me. Const. art. IV, pt. 3, § 18.  The Ranked-Choice Voting Act[3] created by the citizens' initiative did not, however, amend 21-A M.R.S. § 723(1) (2017),[4] which

---

[2]  The Ranked-Choice Voting Act, which we refer to as the RCVA, defined an "[o]ffice elected by ranked-choice voting" as any office for "United States Senator, United States Representative to Congress, Governor, State Senator and State Representative, and . . . any nomination[] by primary election to such offices."  L.D. 1557, § 1 (effective Jan. 7. 2017) (codified at 21-A M.R.S. § 1(27-C) (2017)).

[3]  The Ranked-Choice Voting Act was officially titled, "An Act To Establish Ranked-choice Voting." L.D. 1557.

[4]  At the time the RCVA was enacted by citizen vote, 21-A M.R.S. § 723 (2015) was in effect.  On June 22, 2017, the Legislature amended section 723. P.L. 2017, ch. 248, §§ 1-9 (effective Nov. 1, 2017) (codified at 21-A M.R.S. §§ 144, 145, 311(1), 723(1)(A), (2), 753-B(5) (2017)); 30-A M.R.S. §§ 757(2)(A), 2528(4)(C) (2017)).  These amendments, enacted prior to the major revision made by "An Act To Implement Ranked-choice Voting in 2021," P.L. 2017, ch. 316, §§ 1-14 (effective Feb. 5, 2018), made no substantive changes to the voting method, but modified section 723 and several other provisions as to voter enrollment requirements.  P.L. 2017, ch. 248, §§ 1-9.  These intervening amendments do not affect the current dispute.  We therefore cite to the 2017 version of section 723.

4

states that "[i]n a primary election, the person who receives a plurality of the votes cast for nomination to any office, as long as there is at least one vote cast for that office, is nominated for that office."  Thus, section 723(1) continued to provide that the winner of a primary election would be determined by a plurality of the votes, even while section 1(27-C) named primary elections as among those elections to be conducted using ranked-choice voting.

[¶5]  On May 23, 2017, at the request of the Maine Senate pursuant to Me. Const. art. VI, § 3, we, as individual Justices of the Maine Supreme Judicial Court, issued a unanimous Advisory Opinion stating that specific aspects of the RCVA conflict with three portions of the Maine Constitution—Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, § 4; and Me. Const. art. V, pt. 1, § 3.  *Opinion of the Justices*, 2017 ME 100, ¶¶ 1, 7, 9, 57, 64-68, 72, 162 A.3d 188.  Those sections address the election of the Governor and members of the Maine Legislature, both Senators and Representatives.[5]  Me. Const. art. IV, pt. 1, § 5; Me. Const. art. IV, pt. 2, § 4; Me. Const. art. V, pt. 1, § 3.

---

[5]  In the Senate's request for an Advisory Opinion regarding the constitutionality of the ranked-choice voting statute, we were not asked to address primary elections, which are governed entirely by statute and find no source in the Maine Constitution itself.  *See Opinion of the Justices*, 2017 ME 100, ¶ 3, 162 A.3d 188; *see also* 21-A M.R.S. §§ 331-40 (2017); *In re Primary Election Ballot Disputes 2004*, 2004 ME 99, ¶ 3, 857 A.2d 494.

Although the Advisory Opinion did not generate binding precedent, we unanimously opined that the method of ranked-choice voting is inconsistent with election by a "plurality" as that word is used in the Maine Constitution.  *Opinion of the Justices*, 2017 ME 100, ¶¶ 9, 64-69, 162 A.3d 188.

[¶6]  In the months that followed, a number of legislative efforts were commenced regarding ranked-choice voting.  *See* L.D. 1256 (128th Legis. 2017); L.D. 1624 (128th Legis. 2017); L.D. 1625 (128th Legis. 2017). Ultimately, the Legislature enacted "An Act To Implement Ranked-choice Voting in 2021," which we refer to as the Implementation Act.  P.L. 2017, ch. 316, §§ 1-14 (effective Feb. 5, 2018); *see* Comm. Amend. B to L.D. 1646, No. H-568 (128th Legis. 2017).  The Implementation Act, P.L. 2017, ch. 316, §§ 1-14, had two essential components:

- It delayed all aspects of the implementation of ranked-choice voting until December 1, 2021, and

- It provided for an automatic repeal of all ranked-choice voting provisions on December 1, 2021, if, by that date, the Maine Constitution had not been amended to allow ranked-choice voting for the offices of Maine Senator, Maine Representative, and Governor.

[¶7]  Three days before the effective date of the Implementation Act, a people's veto of portions of the Implementation Act was initiated by the submission of signatures later certified by the Secretary of State.  *See* Me. Const. art. IV, pt. 3, §§ 17, 20; 21-A M.R.S. §§ 901-906 (2017).  Pursuant to Me. Const. art. IV, pt. 3, § 17(3), the Secretary of State announced that the statewide vote on whether to veto the challenged portions of the Implementation Act would

6

take place on June 12, 2018, the same day as the primary elections for the United States House and Senate, Governor, and State House and Senate.

[¶8]  As a result of the initiation of the people's veto, certified by the Secretary of State, the effect of those challenged portions of the Implementation Act was "suspended" as of February 2, 2018, pending the vote on June 12, 2018. Me. Const. art. IV, pt. 3, § 17(2).  Critical to the matter before us, the delay of the implementation of ranked-choice voting until 2021 was *suspended*.  As a result, the RCVA, along with certain portions of the Implementation Act, became immediately effective, thus effectuating ranked-choice voting for the June 2018 primary elections.  *See* Me. Const. art. IV, pt. 3, § 17(2).

[¶9]  With the challenged portions of the Implementation Act suspended, the provisions of law that are pertinent to the primary elections are:

- The preexisting and unamended portions of the elections statutes,

- The provisions put in place by the citizens' enactment of the RCVA in 2016, and

- Those portions of the Implementation Act that are not suspended by the people's veto.[6]

---

[6]  The Implementation Act repealed the definition of "[o]ffices elected by ranked-choice voting" and replaced it with a new version of 21-A M.R.S. § 1(27-C) defining "[e]lections determined by ranked-choice voting" as follows:

**27-C. Elections determined by ranked-choice voting.** "Elections determined by ranked-choice voting" means:

[¶10] On February 16, 2018, the Committee for Ranked-Choice Voting and congressional and gubernatorial candidates Lucas St. Clair, Jim Boyle,[7] Mark Dion, Mark Eves, Sean Faircloth, Diane Russell, Betsy Sweet, and Ben Chipman (collectively, the Committee) filed a complaint in the Superior Court against the Secretary of State seeking a declaratory judgment that the Secretary of State is required to implement ranked-choice voting in the primary elections. *Comm. for Ranked-Choice Voting v. Sec'y of State*, AUGSC-CV-2018-24, at 9 n.4 (Me. Super. Ct., Kennebec Cty., Apr. 3, 2018). We understand that the Secretary of State initially announced that his office *would* implement ranked-choice voting for the primary elections, with the initial result that the suit was not aggressively pursued.

[¶11] On March 29, 2018, the Secretary of State indicated that there was a conflict between 21-A M.R.S § 1(27-C)—directing the use of ranked-choice

---

A. Primary elections for the offices of United States Senator, United States Representative to Congress, Governor, State Senator and State Representative; [and]

B. General and special elections for the offices of United States Senator and United States Representative to Congress.

P.L. 2017, ch. 316, § 1. Because it is not challenged by the people's veto, the version of section 1(27-C) currently in place is that adopted by the Implementation Act. Both versions of section 1(27-C) (that enacted by the RCVA and that enacted by the Implementation Act) provide for ranked-choice voting in the primary elections, however.

7 Jim Boyle and Sean Faircloth have since withdrawn from the gubernatorial race.

8

voting in primary elections—and 21-A M.R.S § 723—providing for plurality winners in primary elections. Immediately after the Secretary of State raised this issue, the Committee pressed its suit, requesting a temporary restraining order "requiring the Secretary of State to continue the implementation of ranked-choice voting for the June 12, 2018 primary election."[8]  *Comm. for Ranked-Choice Voting*, AUGSC-CV-2018-24, at 9.  The Senate did not move to intervene in the litigation commenced by the Committee.

[¶12]  The court (*Murphy, J.*), recognizing the urgency of the matter, conducted a hearing on the afternoon of March 29, 2018, and entered a thorough order dated April 3, 2018, to which the parties agreed, addressing and resolving the statutory conflict and requiring the Secretary of State to "continue implementation of the system of ranked-choice voting for the June 12, 2018 primary election in accordance with 21-A M.R.S. § 1(27-C) and 21-A M.R.S. § 723-A."[9]  *Comm. for Ranked-Choice Voting*, AUGSC-CV-2018-24, at 13-14.  No

---

[8]  Meanwhile, the Secretary of State posted draft rules detailing the procedures for the administration of elections using ranked-choice voting.  Department of the Secretary of State, Proposed Rules Governing the Administration of Elections Determined by Ranked-Choice Voting (Mar. 28, 2018), http://www.maine.gov/sos/cec/elec/upcoming/pdf/250rcv.pdf; *see* P.L. 2017, ch. 316, § 10 (effective Feb. 5, 2018) (to be codified at 21-A M.R.S. § 723-A(5-A)).

[9] In particular, the court concluded that the Committee had met its burden to establish a likelihood of success on the merits of its claim that the intent of the citizens in enacting the ranked-choice voting statute was to apply ranked-choice voting to the primary elections, notwithstanding other preexisting statutory language to the contrary.  *Comm. for Ranked-Choice Voting v. Sec'y of State*, AUGSC-CV-2018-24, at 11-13 (Me. Super. Ct., Kennebec Cty., Apr. 3, 2018); *see Ingraham v. Univ. of Me. at Orono*, 441 A.2d 691, 693 (Me. 1982) (setting out the criteria for obtaining injunctive relief).

appeal from that order has been taken, and the parties to that proceeding have indicated that no appeal will be pursued.

[¶13] On the same day that the Superior Court declared that ranked-choice voting would be applicable to the primary elections, the Maine Senate filed a five-count complaint against the Secretary of State seeking declaratory and injunctive relief to halt the implementation of ranked-choice voting in the primary elections. The parties agreed to a stipulated record, and, by order dated April 11, 2018, the Superior Court reported to us, pursuant to M.R. App. P. 24(a), the following questions.

1. Has the Senate proven, on the Stipulated Record appended hereto, that the Secretary of State's commitment or expenditure of funds for the purpose of implementing ranked-choice voting in the June 12, 2018 primary election constitutes a violation of the Legislature's appropriation authority or the Separation of Powers clause in the Maine Constitution, Article III, § 2, where the appropriation for the Secretary of State in the biennial budget law (P.L. 2017, c. 284) does not contain language explicitly referencing ranked-choice voting and the enactment of P.L. 2017, c. 316 was partially suspended by a People's Veto Petition?

2. Has the Senate proven, on the Stipulated Record appended hereto, that the current statutory framework, including without limitation 21-A M.R.S. § 723-A, does not provide sufficient authority for the Secretary of State to arrange for the retrieval and transport of ballots cast by voters at the June 12, 2018 primary election from municipalities to a central location in order to determine the winners of the election by ranked-choice voting?

3. Has the Senate proven, on the Stipulated Record appended hereto, that the current statutory framework, including without limitation 21-A M.R.S §§ 1(27-C), 1(35-A), 339, 695, 722(1), 723(1), some of which are suspended by the filing of the People's Veto Petition pursuant to the Constitution of Maine, art. IV, pt. 3, § 17, prohibits determining the winners of the June 12, 2018 primary election by ranked-choice voting?

4. Has the Senate shown that it has standing to bring any and all of the legal claims set forth in its Complaint?

5. Has the Senate shown that any or all of the legal claims set forth in the Senate's Complaint are justiciable under the political question doctrine?

6. Has the Senate shown that any or all of the legal claims set forth in its complaint are ripe for adjudication?

7. Has the Senate identified a cause of action for any of the legal claims set forth in its Complaint?

## II. DISCUSSION

A. Reported Questions

[¶14] We begin by addressing the vehicle by which this matter reaches us—a Report pursuant to M.R. App. P. 24(a).[10] Because there has been no trial

---

[10] Maine Rule of Appellate Procedure 24(a) provides,

**(a) Report by Agreement of Important or Doubtful Questions.** When the trial court is of the opinion that a question of law presented to it is of sufficient importance or doubt to justify a report to the Law Court for determination, it may so report when:

(1) all parties appearing agree to the report;

court adjudication of facts or other matters ordinarily resolved by the trial court, we do not automatically accept such a report. *Conservatorship of Emma*, 2017 ME 1, ¶ 7, 153 A.3d 102. "When the trial court reports questions for review, we independently determine whether acceptance of the report is consistent with our basic function as an appellate court or would improperly place us in the role of an advisory board" due to the lack of a final trial court judgment to review. *Id.* (quotation marks omitted). Although we emphasize that the acceptance of a reported question is the exception, not the rule, *see id.*, in these unusual circumstances, we do accept the Report pursuant to Rule 24(a).

B.    Question 3

[¶15]   We address Question 3 first. The Senate asks whether the contradiction between the application of ranked-choice voting to the primary elections delineated in 21-A M.R.S. § 1(27-C) and the plurality provision for

---

(2) there is agreement as to all facts material to the appeal; and

(3) the decision thereon would, in at least one alternative, finally dispose of the action.

primary elections described in 21-A M.R.S. § 723(1) prevents the Secretary of State from implementing ranked-choice voting in the June 12, 2018, primary.

[¶16]  The Senate's argument on Question 3 addresses the very issue decided by the Superior Court in *Committee for Ranked-Choice Voting v. Secretary of State*, AUGSC-CV-2018-24 (Me. Super. Ct., Kennebec Cty., Apr. 3, 2018).  Had the parties in this case been able to fully address the issue of the Senate's decision not to seek intervention in *Committee for Ranked-Choice Voting*, it is possible that we would have determined that the Senate was precluded from advancing the same argument now.  *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (identifying six circumstances in which the assertion of collateral estoppel is permitted against a nonparty under the federal common law).  We have never addressed the issue of nonparty preclusion in these circumstances, however, and we do not take this occasion to opine on it now.  Accordingly, we address the merits of Question 3.

[¶17]  For decades, Maine's election laws have explicitly provided that the winner of a primary election is determined by a plurality of the votes.  *See* 21-A M.R.S. §723(1); P.L. 1985, ch. 161, § 6 (effective Sept. 19, 1985).[11]

---

[11]  Public Law 1985, ch. 161, repealed the prior title 21 M.R.S.A, generally governing election practices, and replaced title 21 with title 21-A, which has since governed election laws.  P.L. 1985, ch. 161, §§ 5-6 (effective Sept. 19, 1985).

Section 723(1) provides, in pertinent part, "[i]n a primary election, the person who receives a *plurality* of the votes cast for nomination . . . is nominated for that office." 21-A M.R.S. § 723(1). When the RCVA was enacted by the citizens' initiative in 2016, it addressed the application of ranked-choice voting to the primary elections through the enactment of 21-A M.R.S. § 1(27-C), which declared that an office elected by ranked-choice voting "includes any nominations by primary election to such offices." L.D. 1557, § 1. The RCVA, however, contained no reference to or amendment of section 723(1), thus creating a direct conflict in the applicable statutory provisions.

[¶18] When the RCVA was addressed by the Legislature in 2017, the reference in section 723(1) to plurality voting for primary elections was left in place until December 1, 2021. P.L. 2017, ch. 316, § 6. At the same time, the format of 21-A M.R.S. § 1(27-C) was amended so that, upon a later effective date, primary elections would proceed as follows:

> **27-C. Elections determined by ranked-choice voting.**
> "Elections determined by ranked-choice voting" means:
>
> A. Primary elections for the offices of United States Senator, United States Representative to Congress, Governor, State Senator and State Representative.

P.L. 2017, ch. 316, § 1.

14

[¶19] As a result of the people's veto, the changes to section 723(1) that deferred rank-choice voting in primary elections for several years were suspended, thus removing any temporal impediment to the original plurality language of section 723(1). *See* Me. Const. art. IV, pt. 3, § 17(2). Separately, the requirement of ranked-choice voting in the primary elections established by 21-A M.R.S. § 1(27-C) became immediately effective and would apply to the June 2018 primary elections. Because determining the winner of an election through plurality voting is inconsistent with determining the winner through a ranked-choice voting process, *see Opinion of the Justices*, 2017 ME 100, ¶¶ 64-69, 162 A.3d 188,[12] the two statutes are in conflict.

[¶20] The legal issue presented by the conflict presents an age-old question—which of two conflicting provisions applies? *See, e.g. Knight v. Aroostook River R.R. Co.*, 67 Me. 291, 293 (1877).[13] When a more recent

---

[12] We acknowledge that an Opinion of the Justices is advisory only, and it does not provide binding precedent. Me. Const. art. VI, § 3; *Opinion of the Justices*, 2017 ME 100, ¶ 9, 162 A.3d 188. Through this opinion, we adopt the referenced reasoning in full without reciting the analysis verbatim. *Opinion of the Justices*, 2017 ME 100, ¶¶ 64-69, 162 A.3d 188 (advising that "the Ranked-Choice Voting Act is in direct contradiction to the plurality requirements of the Maine Constitution").

[13] Quoting a Massachusetts case, *Commonwealth v. Kelliher*, 94 Mass. (12 Allen) 480, 481 (1866), with approval, we said in *Knight v. Aroostook River Railroad Co.*, 67 Me. 291, 293 (1877),

[W]henever a statute is passed which embraces all the provisions of previous statutes on the same subject, the new statute operates as a repeal of all antecedent enactments. This well settled rule of interpretation is founded on the reasonable inference that the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject matter in force at the same

amendment to a Maine statute directly conflicts with an older provision, we must, as always, determine the intent of the Legislature, and the question becomes whether the older provision has been repealed "by implication." *Blair v. State Tax Assessor*, 485 A.2d 957, 959 (Me. 1984). We apply this method of statutory construction

> when a later enactment encompasses the entire subject matter of an earlier act, or when a later statute is inconsistent with or repugnant to an earlier statute. When a later statute does not cover the earlier act in its entirety, but is inconsistent with only some of its provisions, a repeal by implication occurs to the extent of the conflict.

*Id.* (citations omitted).

[¶21] In the matter before us, there is both a direct conflict in the statutorily provided method of voting in Maine primary elections and a clarity of purpose regarding the most recent enactment.[14] *See Lewiston Firefighters Assoc. v. City of Lewiston,* 354 A.2d 154, 159-160 (Me. 1976); *see also Opinion of the Justices*, 311 A.2d 103, 108 (Me. 1973).

---

> time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law.

[14] Although we would not apply concepts of implicit repeal in doubtful cases, *see Lewiston Firefighters Assoc. v. City of Lewiston,* 354 A.2d 154, 159 (Me. 1976), there is no doubt about the direct conflict in this case.

[¶22]  The consistent and explicit purpose of the citizens' initiative and the people's veto has been to transition Maine elections to a system of ranked-choice voting.  The wisdom of ranked-choice voting is not before us.  Our role is to determine and effectuate the intent of the legislation unless it conflicts with the Maine Constitution or the United States Constitution.  Neither Constitution is implicated by the questions presented here, but the statutory conflict is clear.  Despite the existing reference to plurality voting in the primary elections in section 723(1), both the RCVA as first enacted by the people in 2016 and the amendments to ranked-choice primary voting enacted by the Legislature in the Implementation Act in 2017 and immediately effectuated through the people's veto expressly provide for primary elections to be governed by ranked-choice voting.  L.D. 1557, § 1; P.L. 2017, ch. 316, § 1.

[¶23]  It is evident that the ranked-choice primary provision of the RCVA, 21-A M.R.S. § 1(27-C), enacted by the people through the initiative process and amended only in format by the Legislature in the Implementation Act, is "repugnant" in substance to the plurality provision in 21-A M.R.S. § 723(1).  *Lewiston Firefighters Assoc.*, 354 A.2d at 160.  Thus, as we have held, "the new statute, being the most recent expression of the legislative will, must be deemed

a substitute for previous enactments." *Knight*, 67 Me. at 293 (quoted with approval in *Lewiston Firefighters Assoc.,* 354 A.2d at 160).

[¶24]   Accordingly, we conclude that the "plurality" provision of 21-A M.R.S. § 723(1) has been implicitly repealed by the most recent provision of law addressing the ranked-choice voting method to be employed in the June primary elections, 21-A M.R.S. § 1(27-C).[15]  Pursuant to 21-A M.R.S § 1(27-C), ranked-choice voting must be applied to the primary elections on June 12, 2018.

C.    Question 1

[¶25]   Through Question 1, the Senate seeks a declaration that the Secretary of State lacks constitutional authority to commit and expend public monies for the implementation of ranked-choice voting in the absence of an explicitly targeted appropriation by the Legislature.   Assuming without deciding that the Senate has standing to assert such a claim, we conclude that Question 1 is not justiciable.

[¶26]   We have long recognized a host of considerations according to which we will decline to exercise jurisdiction; we refer to this as the "universal rule" of justiciability. *Opinion of the Justices*, 2017 ME 100, ¶ 15, 162 A.3d 188

---

[15]  This determination is consistent with the decision of the Superior Court in *Committee for Ranked-Choice Voting*, AUGSC-CV-2018-24, at 11-13.

(quotation marks omitted). Justiciability regards "the fitness of the issues for judicial decision." *New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 448 A.2d 272, 302 (Me. 1982) (quotation marks omitted).

[¶27] In the context of the matter at bar, the requirement of justiciability demands that our authority to decide a matter is limited by that most basic tenet of our governmental structure—the constitutionally-mandated separation of powers. *See* Me. Const. art. III, § 2; *Bouchard v. Dep't of Pub. Safety*, 2015 ME 50, ¶ 10, 115 A.3d 92. The Maine Constitution requires both that "[t]he powers of this government shall be divided into 3 distinct [Branches], the legislative, executive and judicial" and that "[n]o person or persons, belonging to one of these [Branches], shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted." Me. Const. art. III, §§ 1-2; *see Opinion of the Justices*, 2017 ME 100, ¶ 13, 162 A.3d 188.

[¶28] Like the federal courts, "our constitutional structure does not require that the Judicial Branch shrink from a confrontation with the other two coequal branches." *Raines v. Byrd*, 521 U.S. 811, 833 (1997) (Souter, J., concurring) (alterations omitted) (quotation marks omitted). Nevertheless, there are some matters in which we will exercise judicial restraint by refusing

to adjudicate matters where the adjudication "would involve an encroachment upon the executive or legislative powers." *Wright v. Dep't of Def. & Veterans Servs.*, 623 A.2d 1283, 1285 (Me. 1993) (quotation marks omitted); *see Turner v. Safley*, 482 U.S. 78, 85 (1987) ("[S]eparation of powers concerns counsel a policy of judicial restraint."), *superseded by statute*, Religious Freedom Restoration Act, Pub. L. No. 103-141, 107 Stat. 1488.

[¶29] Regarding Question 1, the Senate argues that the general allocation of funding to the Secretary of State cannot be utilized by the Secretary of State absent an explicitly-descriptive allocation of appropriated funds to particular actions related to voting and elections. The Senate has provided neither a constitutional basis for this argument nor a statutory foundation for its claim to restrict the authority of the Secretary of State.

[¶30] Without pointing to a live, current constitutional violation, the Senate asks the Court to involve itself in the Secretary of State's expenditure of already-appropriated funds. The separation of powers doctrine precludes us from entertaining this request by the Senate for the Court to assume any role in supervising the legislatively delegated tasks of the Secretary of State. *See generally,* 21-A M.R.S. §§ 21, 601–609 (2017). As the United States Supreme Court has announced, courts will not involve themselves in the "amorphous

general supervision of the operations of government." *Raines*, 521 U.S. at 829. Question 1 is not justiciable.

D.    Question 2

[¶31]   Regarding Question 2, the Senate challenges the Secretary of State's authority, in the absence of additional explicit legislative action, to arrange for the security, possession, and transportation of ballots in a ranked-choice voting election.   As with Question 1, we are not persuaded by the suggestion that the logistics of implementing ranked-choice voting create a constitutional crisis sufficient for us to ignore the separation of powers problems inherent in these circumstances.   Question 2 regards the epitome of governmental action in which the courts lack authority to meddle pursuant to the separation of powers doctrine.   Question 2 is not justiciable.

E.    Questions 4 through 7

[¶32]   The remaining questions have been resolved by our answers to Questions 1, 2, and 3 and are therefore moot.

### III.  CONCLUSION

[¶33]   We have accepted the Report of Questions from the Superior Court pursuant to M.R. App. P. 24(a).   As to Question 3, we conclude that

ranked-choice voting is the law of Maine with regard to the primary elections on June 12, 2018, notwithstanding any contradiction by 21-A M.R.S. § 723(1).

[¶34] We have also determined that the courts of Maine will not adjudicate either of the remaining substantive questions presented by the Report—Questions 1 and 2. These questions ask us to address the internal funding and administrative decisions of the Office of the Secretary of State and seek the Court's intervention into the prospective logistical arrangements for securing, possessing, and transporting the ballots during the primary elections to be held on June 12, 2018. We conclude that these questions, which reflect Counts 1 through 4 of the Senate's complaint, cannot be adjudicated because they are quintessentially nonjusticiable.

[¶35] Finally, the need to answer Questions 4, 5, 6, and 7, which address justiciability, is obviated by our answers to Questions 1, 2, and 3. The issues raised in those four questions are moot. Thus, the matters raised by the Senate's complaint, distilled to the seven questions presented here, are fully resolved by our answers.

22

The entry is:

> Report accepted. Remanded to the Superior Court for entry of judgment on Count 5 (Question 3) declaring that ranked-choice voting shall be employed in the June 12, 2018, primary election, and dismissing as nonjusticiable Counts 1, 2, 3, and 4 (Questions 1 and 2).
>
> Mandate to issue forthwith.

---

Timothy C. Woodcock, Esq. (orally), Ryan P. Dumais, Esq., and Kady S. Huff, Esq., Eaton Peabody, Bangor, for the Maine State Senate

Phyllis Gardiner, Esq. (orally), and Thomas A. Knowlton, Esq., Office of the Attorney General, Augusta, for the Secretary of State

James G. Monteleone, Esq. (orally), and Michael R. Bosse, Esq., Bernstein Shur, Portland, for the Committee for Ranked-Choice Voting, Lucas St. Clair, Mark Eves, Diane Russell, Betsy Sweet, and Ben Chipman

Timothy R. Shannon, Esq., Rachel M. Wertheimer, Esq., Jonathan Dunitz, Esq., Marie M. Mueller, Esq., and Samuel Baldwin, Esq., Verrill Dana, LLP, Portland, for amicus The League of Women Voters of Maine

Kennebec County Superior Court docket number CV-2018-51
FOR CLERK REFERENCE ONLY