MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2020 ME 122
Docket:      Cum-19-48
Argued:      March 2, 2020
Decided:     October 22, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ., and HJELM and CLIFFORD,
             A.R.JJ.*
Majority:    MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ., and CLIFFORD, A.R.J.
Dissent:     HJELM, A.R.J.

THE BANK OF NEW YORK MELLON

v.

DANIELLE SHONE et al.

HORTON, J.

[¶1]  In this appeal from a residential foreclosure judgment of the Superior Court (Cumberland County, *Warren, J.*), we are called upon to clarify the criteria under the business record exception to the hearsay rule for admitting in evidence records that a business has obtained from another entity and integrated into its own records or operations.  *See* M.R. Evid. 803(6).  Our decisions since 1984 have endorsed two conflicting interpretations of Rule 803(6) as it relates to integrated business records, and this case affords an

---

  * Although not present at oral argument, Active Retired Justice Clifford participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified Justice may participate in a decision even though not present at oral argument.").

opportunity to resolve the conflict. We hereby reaffirm the interpretation first set forth in our 1984 decision in *Northeast Bank & Trust Co. v. Soley,* 481 A.2d 1123, 1127 (Me. 1984), which is consistent with the widely accepted interpretation of the identical federal rule, *see U.S. Bank Tr., N.A. v. Jones*, 925 F.3d 534, 537 (1st Cir. 2019). We conclude that a record that one business has received from another is admissible under Rule 803(6) without testimony about the practices of the business that created the record, provided, first, that the proponent of the evidence establishes that the receiving business has integrated the record into its own records, has verified or otherwise established the accuracy of the contents of the record, and has relied on the record in the conduct of its operations, and, second, that the opponent of admission has not shown that the record is nonetheless not sufficiently trustworthy to be admitted.

## I. BACKGROUND AND PROCEDURAL HISTORY

[¶2] We draw the following brief account of this case from the procedural record and the evidence offered or referenced at trial.

[¶3] In 2015, The Bank of New York Mellon commenced this foreclosure action against Danielle Shone and Michael Buck. The Bank's complaint alleged that in 2005, Buck had taken out a loan from America's Wholesale Lender and

that, to secure Buck's performance pursuant to the promissory note for that loan, Shone and Buck had executed a mortgage on a Portland property they owned. Although the original lender and mortgagee were third-party entities, the Bank alleged that it ultimately acquired the note and mortgage. The Bank also alleged that Buck had stopped making payments on the loan in 2008.

[¶4] The court held a bench trial on the complaint in October 2018. There, the Bank offered an exhibit containing a notice of default and right to cure purportedly sent to Shone and Buck by the law firm retained by Bayview Loan Servicing, which serviced the note and mortgage for the Bank, along with a purported U.S. Postal Service certificate of mailing. The Bank first attempted to qualify the exhibit for admission in evidence by calling an employee of the law firm to testify about that office's procedures for creating and mailing notices of default, but the court barred that testimony because the Bank's witness list had not properly identified the prospective witness by name or capacity. The Bank next attempted to submit an affidavit from a law firm employee as a mechanism for admitting the notice itself pursuant to M.R. Evid. 902(11). The court did not allow the Bank to use that procedure because it had

4

not, as required by the rule, provided Shone and Buck with reasonable advance notice that it would seek to do so.[1]

[¶5] The Bank then attempted to present a testimonial foundation for the exhibit through James D'Orlando, a litigation manager employed by Bayview. After D'Orlando testified, the court excluded the notice from evidence because the Bank failed to present evidence that D'Orlando had personal knowledge about the law firm's practices relating to the creation and mailing of notices of default and right to cure. Because the Bank was therefore unable to prove that it had satisfied the notice requirements imposed by 14 M.R.S. § 6111 (2018),[2] the court entered judgment for Shone and Buck.[3] After the court

---

[1] Neither of those rulings is at issue on this appeal.

[2] This statute was recently amended to change the procedure for providing the notice. *See* P.L. 2019, ch. 361 §§ 1-2 (effective Sept. 19, 2019) (codified at 14 M.R.S. § 6111(2-A) (2020)).

[3] Although, in the end, the trial in this case was limited to the Bank's attempt to enter in evidence the notice of default and right to cure, the Bank does not suffer the same fate as the plaintiff-mortgagee in *Wilmington Savings Fund Society, FSB v. Abildgaard*, 2020 ME 48, 229 A.3d 789. There, after the court excluded a similar notice from evidence but before the plaintiff presented evidence or an offer of proof that covered the remaining elements of a foreclosure case, the plaintiff voluntarily rested its case-in-chief, and the court entered judgment for the defendant. *Id.* ¶ 4. On appeal, we held that as the result of the plaintiff's choice to rest without presenting evidence that could satisfy all elements of its case, we were required to affirm the adverse judgment irrespective of whether the court's evidentiary ruling was erroneous. *Id.* ¶ 5.

Here, in contrast, at Shone and Buck's own suggestion, the parties and the court agreed that, as the first step in the trial, because of the potentially dispositive nature of that issue, the Bank would present evidence to try to establish that the notice was an admissible business record. After excluding the document following D'Orlando's testimony but without the Bank having rested its case, the court proceeded to enter judgment against the Bank. Even though the Bank did not make any offer of proof as to the remaining elements of its claim, it is clear that the Bank did not proceed in a way that forfeited its argument on appeal as the mortgagee did in *Abildgaard*. Thus, if on remand the

denied the Bank's motion to alter or amend the judgment or for a new trial, the Bank appealed to us. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2A.

[¶6] After this case was initially briefed on appeal, we invited the parties and any amici to file additional briefs on the question of whether we should "consider adjusting application of . . . [Maine Rule of Evidence] 803(6), to track application of [Federal Rule of Evidence] 803(6) as addressed in *U.S. Bank Trust, N.A. v. Jones*, 925 F.3d 534 (1st Cir. 2019)." In addition to briefs filed by the parties, we received amici curiae briefs filed by the Federal Housing Finance Agency; Full Disclosure, LLC; Gerald F. Petruccelli, Esq.; Maine Attorneys Saving Homes; the Maine Bankers Association; the Maine Credit Union League; Maine Equal Justice; the National Association of Consumer Advocates et al.; the National Consumer Law Center; PHH Mortgage Corporation; and Pine Tree Legal Assistance, Inc.

## II. DISCUSSION

[¶7] The pivotal issue here centers on the foundational showing that must be made to admit an integrated business record—that is, a record created by one entity and later integrated into the records of a second, separate entity.

---

trial court decides to admit the exhibit at issue, the court likely would need to reopen the record for a full trial on all issues.

6

[¶8]  The traditional method of admitting business records in evidence

pursuant to Rule 803(6) is through the testimony of a witness with personal

knowledge of the practices of the business or other entity that created the

record.  The integrated records method is a different method that applies when

the record has, in effect, become a business record of a business other than the

business that created the record.[4]  *See MRT Constr. v. Hardrives, Inc.*,

158 F.3d 478, 483 (9th Cir. 1998) ("[R]ecords a business receives from others

---

[4]  Under both the traditional approach and the integrated records approach, the proponent of admitting a business record must establish the following:

(A)  The record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B)  The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)  Making the record was a regular practice of that activity.

M.R. Evid. 803(6)(A)-(C).

Under both approaches, the proponent of an exhibit may satisfy these criteria through direct evidence of the regular practices of either the business that created the record or a business that has integrated, verified, and relied upon a record received from another business. In each instance, proof of the business's regular practices can constitute circumstantial evidence of trustworthiness sufficient to justify the inference that the record was created in a manner that satisfies the Rule 803(6) criteria. *See Boca Investerings P'ship v. United States,* 128 F. Supp. 2d 16, 18 (D.D.C. 2000) ("The theory [underlying Federal Rule 803(6)] is that if a statement is recorded in the ordinary course of a regularly conducted activity, and if it is the regular practice of the business to record such a statement, there is a sufficiently high degree of trustworthiness inherent in the document to ensure its truthfulness, making cross-examination of the person who prepared the document less necessary."); *U.S. Bank, N.A. v. Christmas*, No. 26695, 2016 Ohio App. LEXIS 205, at *10 (Ohio Ct. App. Jan. 22, 2016), *vacated on other grounds*, 54 N.E. 3d 1267 (Ohio 2016) ("[A] court may admit a document as a business record even when the proffering party is not the maker of the document, if the other requirements of [Rule 803(6)] are met and the circumstances suggest that the record is trustworthy.  Trustworthiness of a record is suggested by the profferer's incorporation into its own records and reliance on it.") (citations omitted).

are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records."). Thus, the integrated records approach eliminates the need for testimony about the practices of the entity that created the record and shifts the focus to the record's status within the receiving entity.

[¶9]   Evidence of the receiving entity's reliance on the record in the regular course of its business is important because a business's reliance on information in a record it did not create helps demonstrate the trustworthiness of the record.   *Compare MRT*, 158 F.3d at 483 (holding that invoices incorporated into a company's records were admissible under Rule 803(6) to establish amounts paid because the company relied upon the amounts shown in the invoices), *with N.L.R.B. v. First Termite Control Co.*, 646 F.2d 424, 429-30 (9th Cir. 1981) (concluding that third-party records were not admissible under Rule 803(6) to prove the origin of lumber because the recipient business did not rely on the records to determine that origin).

[¶10]   On the other hand, "mere possession or 'custody' of records . . . does not qualify employees of the possessing party to lay the requisite foundation, and reliance by the organization on records created by others,

although an important part of establishing trustworthiness, without more is not sufficient." 2 Kenneth S. Broun et al., *McCormick on Evidence* § 292, at 476-77 (Robert P. Mosteller ed., 8th ed. 2020) (footnote omitted). When "the business offering the records of another has made an independent check of the records, has integrated them into their own business operation in a way that establishes trustworthiness or contains other assurances of trustworthiness, or can establish accuracy by other means, the necessary foundation may be established." *Id.* at 477-48 (footnotes omitted); *see also United States v. Sokolow*, 91 F.3d 396, 403 (3d Cir. 1996) (stating that the business records exception may apply to records obtained from others if the receiving business obtains "adequate verification or other assurance of accuracy" (quotation marks omitted)).

[¶11] The verification element of the integrated records approach requires simply that the business receiving a record establish or confirm the accuracy of the record in some way. *See McCormick on Evidence* § 292, at 477-78. For example, the recipient business may check the record for accuracy before integrating and relying upon it in its own operations. *See U.S. Bank Trust, N.A. v. Jones,* 330 F. Supp. 3d 530, 543 (D. Me. 2018), *aff'd* 925 F.3d 534 (1st Cir. 2019) (noting that the loan servicer "took steps to review the previous

servicer's records in a way that assured itself of the accuracy of the records during the boarding process before placing its own financial interest at stake by relying on those records"). Another means of verification could be for the receiving business to integrate and use the record in the course of its own operations in a manner that confirms the accuracy of the record. *See United States v. Ullrich,* 580 F.2d 765, 771-72 (5th Cir. 1978) (holding that the vehicle inventory schedule prepared by the manufacturer and received by the dealer was integrated and used in the dealer's daily operations in a manner that confirmed the accuracy of the schedule).

[¶12]  Regardless of how verification occurs, "[t]he custodian company's independent check of the documents acts as a proxy for the requirement that the records have been prepared by someone with personal knowledge of the recorded events.  By verifying the documents, the custodian company is in essence acquiring personal knowledge of the recorded events, and thereby effectively adopting the entries in the documents as his own."  *Air Land Forwarders, Inc. v. United States,* 172 F.3d 1338, 1348 (Fed. Cir. 1999) (Bryson, J., dissenting).

[¶13]  Multiple federal circuit courts and numerous other states have upheld the admission of integrated business records upon a showing of

verification and reliance on the part of the receiving business, without the need for testimony from the originating business. *See, e.g.*, *United States v. Adefehinti*, 510 F.3d 319, 325-26 (D.C. Cir. 2007); *Air Land Forwarders, Inc.*, 172 F.3d at 1341-42; *United States v. Childs*, 5 F.3d 1328, 1334-36 (9th Cir. 1993); *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992); *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992); *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984); *Ullrich*, 580 F.2d at 772; *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977); *see also State v. Fitzwater*, 227 P.3d 520, 531-36 (Haw. 2010); *Pizza Corner, Inc. v. C.F.L. Transp., Inc.*, 792 N.W.2d 911, 913-14 (N.D. 2010).

[¶14]  We adopted the federal courts' integrated records approach to Rule 803(6) in *Northeast Bank & Trust Co. v. Soley,* 481 A.2d 1123, 1127 (Me. 1984), a decision that has never been overruled or questioned and that is still good law.

[¶15]  In *Soley,* we decided that the plaintiff bank's practice of obtaining prime rate information from another bank, integrating the information into its own records, and relying on the information in its operations was sufficient to support the admissibility of that information for its truth, without any

testimony by a witness with personal knowledge of the sending bank's practices in developing the information:

> Here, the information was transmitted by an employee of the banking institution which was the source of that information, which information was then integrated into the plaintiff's records and relied upon by the plaintiff in its own business operations. We hold that under these circumstances the schedule satisfied the requirements of M.R. Evid. 803(6) and was properly admitted.

481 A.2d at 1127.

[¶16]  The *Soley* court emphasized the fact that the receiving entity had relied upon the integrated records in its own business operations.  *See id.*  In extending the business records exception to include business records created by someone "not within the [proponent's] organization," *id*, we explained that the regular indicia of reliability had been demonstrated because the bank had an "obvious business incentive in assuring that this employee [of the transmitting bank who reported the prime rate to the receiving bank] would have personal knowledge of changes in the prime rate and would report those changes accurately."  *Id.*

[¶17]  Our endorsement of the integrated records approach in *Soley* rested solidly on federal precedent.  *See id.* (citing *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) (emphasizing the receiving business's regular use of and reliance on integrated records); *Ullrich,* 580 F.2d at 772

(upholding the admission of "records transmitted by persons with knowledge and then confirmed and used in the regular course of the dealership's business")). Our holding in *Soley* also relied upon the factors confirming trustworthiness enumerated in the Notes of the Advisory Committee for the Federal Rules of Evidence). 481 A.2d at 1127 n.3.

[¶18] Eight years after our *Soley* decision, we confirmed that holding by noting that "we have recognized that in certain circumstances business records may include information prepared outside the business." *Leen Co. v. Web Elec., Inc.*, 611 A.2d 83, 83-84 (Me. 1992). However, in *Leen* we upheld the trial court's exclusion of outside records, pointing out that such documents "are admissible only if they contain the indicia of reliability that form the basis of the business record exception." *Id.* at 84 (quotation marks omitted). We specifically discussed how the proponent of the records had failed to demonstrate that reliability:

> Here, Web sought to introduce through the testimony of its own agent records of business correspondence prepared by others, without providing any foundation to suggest that the records were prepared by a person with knowledge of the cause of the delays or were created in the ordinary course of business. The fact that a document is received in the ordinary course of business does not alone satisfy the foundational requirements of rule 803(6).

*Id.* at 84.

[¶19]  However, we adopted a different view of the integrated records approach in a more recent line of cases, beginning with *Beneficial Maine Inc. v. Carter*, decided twenty-seven years after *Soley*, and nineteen years after *Leen*.[5] 2011 ME 77, ¶ 13, 25 A.3d 96.  Our decision in *Carter* endorsed the integrated records approach, citing *Soley*:

> The affiant whose statements are offered to establish the admissibility of a business record on summary judgment need not be an employee of the record's creator.  *See, e.g.*, *Ne. Bank & Trust Co. v. Soley*, 481 A.2d 1123, 1127 (Me. 1984).  For instance, if the records were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness.

*Id.* (citations omitted).

[¶20]  Despite its reliance on *Soley,* our decision in *Carter* departed from *Soley* by requiring that the qualified witness have personal knowledge of the practices of *both* the business that created the record *and* the business that received it, a requirement that negates the entire point of the integrated

---

[5]  The dissent suggests, Dissenting Opinion ¶ 38 n.14, that we arguably began to depart from our holding in *Soley* in *State v. Radley*, in which we decided that the trial court erred in admitting business records of one organization "through the testimony of a witness employed by an entirely different organization, simply because her employer relied on that organization's records in its own business dealings." 2002 ME 150, ¶ 16, 804 A.2d 1127. We distinguished the situation in *Radley* from that in *Soley*, without overruling or questioning *Soley. Id.* ¶ 17 n.2.  What *Radley* stands for, in keeping with *Soley* and our decision today, is that reliance by one business upon the records of another, without verification or corroboration of the accuracy of the records, is insufficient to support admission under the integrated records approach.

records approach we adopted in *Soley*. *See id.* Even so, our *Carter* decision contains no indication that we intended to depart from our holding in *Soley*. Also, the underlying facts of *Carter* did not even involve an integrated records issue because there was no evidence that the entity that created the records in question had sent them to another entity. *Carter*, 2011 ME 77, ¶¶ 2-8, 25 A.3d 96. Instead, *Carter* stands for the proposition that an entity's business records cannot be admitted based on the testimony of a witness who has no personal knowledge of the practices of the entity.[6]

[¶21] In three decisions since *Carter*, we continued to depart from our holding in *Soley,* still without saying so or explaining why, by maintaining the requirement that the proponent of admitting an integrated business record present foundational testimony about the practices of the business that created the record. *See M & T Bank v. Plaisted*, 2018 ME 121, ¶¶ 24, 31, 192 A.3d 601; *Deutsche Bank Nat'l Tr. Co. v. Eddins*, 2018 ME 47, ¶ 14, 182 A.3d 1241; *KeyBank Nat'l Ass'n v. Est. of Quint*, 2017 ME 237, ¶ 13, 176 A.3d 717.

---

[6] In *Beneficial Maine Inc. v. Carter,* Beneficial was the plaintiff in a mortgage foreclosure case. 2011 ME 77, ¶ 2, 25 A.3d 96. The qualifying witness, who was the affiant in the motion for summary judgment, was an employee of HSBC, an entity that serviced the loan. *Id.* ¶ 3. The witness attempted to lay the proper foundation for the introduction of Beneficial's records, not HSBC records that contained integrated records from Beneficial. *Id.* ¶ 4. The *Carter* court held that the affiant did not have first-hand information regarding Beneficial's records and therefore was not able to lay the proper foundation pursuant to Rule 803(6). *Id.* ¶¶ 15-17.

[¶22]  Although these decisions postdate *Soley* and *Leen*, none of them overrules or distinguishes *Soley* or *Leen*, or even acknowledges any substantive departure from *Soley's* holding.  Indeed, two of the four decisions nominally rely on *Soley*—the most recent of the four decisions cites to *Soley*, as did *Carter*.  *See Plaisted*, 2018 ME 121, ¶ 31 n.10.

[¶23]  In other words, *Soley* and *Leen* remain good law.  Thus, although the doctrine of *stare decisis* supports following *Carter*,[7] the case for reaffirming our holding in *Soley* also rests upon *stare decisis*.  In that sense, the question before us is less a matter of honoring *stare decisis* than a matter of resolving the sharp and hitherto unexplained conflict between the two interpretations of Rule 803(6) that we have endorsed at various times since 1984.

[¶24]  Rule 803(6) was restyled in 2014 and then amended in 2018 to align with its federal counterpart.  *See* M.R. Evid. 803 Advisory Committee

---

[7] The dissent advances several objections to our endorsement of the integrated records approach, including an objection based on *stare decisis*.  Dissenting Opinion ¶¶ 54-61.  Given that *Soley* predates *Carter* and has never been questioned or overruled, the integrated records approach has its own foundation in *stare decisis.*  The dissent also contends that the integrated records approach rewrites Rule 803(6).  Dissenting Opinion ¶¶ 32, 65.  But the traditional approach and the integrated records approach are two similar evidentiary paths to proving the same Rule 803(6) criteria.  Both approaches call for first-hand testimony about the practices of a business—either the business that created the record or the business that received the record—based upon which it can be inferred, as a matter of circumstantial evidence, that the record in question meets the Rule 803(6) criteria. Based on its view that we are rewriting the rule, the dissent also contends that we should be engaging in rulemaking as the Supreme Judicial Court rather than opining as the Law Court.  Dissenting Opinion ¶¶ 65-67.  The contention would be well-taken if we were adopting a new interpretation of the rule, but we are simply reaffirming an interpretation of the rule that we first endorsed thirty-six years ago.

Note—August 2018; M.R. Evid 803 Maine Restyling Note—November 2014. The Advisory Committee Notes accompanying both the 2014 restyling of Rule 803(6) and the 2018 amendment indicate that the changes in the language of the rule were not intended to make any substantive change in the rule, and therefore neither of these changes to Rule 803(6) addressed or resolved the conflict between the *Soley* and *Carter* lines of cases.

[¶25]  As our reliance in *Soley* on federal authority illustrates, we regularly look to federal analysis when interpreting our own identical or nearly identical rules. *See, e.g.*, *State v. Gorman*, 2004 ME 90, ¶¶ 30-31, 854 A.2d 1164 (comparing M.R. Evid. Rule 803(5) with Fed. R. Evid. 803(5)); *State v. Discher*, 597 A.2d 1336, 1342 (Me. 1991) (same).  Reaffirming *Soley* aligns our interpretation of Maine Rule of Evidence 803(6) with the widely accepted interpretation that federal courts apply to the identical federal rule.  It promotes a uniformity of application of the business records exception in Maine's federal and state courts, and—in that sense—discourages forum-shopping.

[¶26] The opposition of the appellees and some of the amici to the *Jones* and *Soley* integrated records approach appears grounded primarily in their view that the recordkeeping practices of mortgage loan servicers such as

Bayview are too unreliable to justify the admission of a record that one servicer has received from a prior servicer or other entity without testimony based on personal knowledge regarding the practices and procedures of the business that created the record. The lack of reliability of records submitted in foreclosure cases by some residential mortgage lenders or loan servicers has been amply documented. *See, e.g.*, *HSBC Mortg. Servs.*, *Inc. v. Murphy*, 2011 ME 59, ¶ 15 n.8, 19 A.3d 815 (noting "the recurring problem of lenders submitting unreliable affidavits and documents in residential foreclosure proceedings").

[¶27] Still, the recordkeeping shortcomings of some members of a particular business sector should not drive our interpretation of a rule of evidence that applies to the records of all businesses and, more broadly, as Rule 803(6)(B) indicates, to the records of any "organization, occupation, or calling." If the records kept by mortgage lenders or loan servicers in particular are categorically unreliable, more stringent proof requirements might be appropriate.[8] But there is no good reason to require in every case testimony based on personal knowledge of the practices of the business that created a

---

[8] For example, the Maine Legislature has enacted special requirements for collection actions brought by consumer debt buyers. *See* 32 M.R.S. § 11019 (2020); *see also* P.L. 2017, ch. 216, § 6 (effective Nov. 1, 2017).

record when the business that received the record can meet the integration, verification, and reliance criteria of the integrated records approach.

[¶28]  Moreover, the federal and Maine versions of Rule 803(6) guard against the admission of untrustworthy integrated business records by precluding admission, even when the proponent makes an initial showing of integration, verification, and reliance, if the opposing party "show[s] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E); M.R. Evid. 803(6)(E).  Lastly, the integrated records approach is only a means of laying a foundation for the admission in evidence of a record; it does not purport to define or establish the weight to be given to the record.

[¶29]  In this case, the trial court's exclusion of the exhibit at issue was consistent with the *Carter* line of cases, because the Bank did not present any first-hand testimony about the practices of the law firm that purportedly created and mailed the notices of default.

[¶30]  Because we today reaffirm the integrated records approach that we adopted in *Soley*, under which such foundational evidence is unnecessary, we must vacate the judgment and remand the matter for the trial court to determine, based on the current record, whether the Bank's exhibit, which

includes the two purported notices of default and a separate purported U.S. Postal Service certificate of mailing, meets the integration, verification, and reliance criteria for admission in evidence as an integrated record.[9]

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

———————————

HJELM, A.R.J., dissenting.

[¶31] The Court today remands this case for the trial court to reconsider its ruling that excluded from evidence an integrated business record critical to the Bank of New York Mellon's foreclosure claim, with the new determination to be based not on Maine law but on a materially different standard for admissibility that is used in other jurisdictions, notably a number of federal courts.

---

[9] When admission of evidence under the business records exception to the hearsay rule is challenged, "'we review a trial court's foundational findings to support admissibility for clear error and its ultimate determination of admissibility for an abuse of discretion.'" *Am. Express Bank, FSB v. Deering,* 2016 ME 117, ¶ 12, 145 A.3d 551 (quoting *State v. Abdi,* 2015 ME 23, ¶ 16, 112 A.3d 360). Thus, the determination of whether some or all of the materials contained in the exhibit at issue is admissible based on the current record should, at least initially, be made by the trial court. Nothing in this opinion should be taken to imply a view regarding whether the exhibit should be admitted as an integrated record. In light of our adoption of a different evidentiary standard than was argued at trial, the court may reopen the record to allow further argument by the parties. If the court decides to admit the exhibit, the trial may resume on all issues in contention.

20

[¶32] To arrive at its conclusion, the Court errs in two fundamental ways. The first is analytical. As the Court acknowledges, the trial court correctly applied Maine law that governs the admissibility of business records. *See* M.R. Evid. 803(6). By nonetheless vacating the judgment, however, the Court derogates from principles of *stare decisis* and improperly dispenses with that well-established Maine jurisprudence—jurisprudence that we have developed over nearly the past decade and that is entirely consonant with Rule 803(6). The second error is structural. Because the Court's reasoning is not supported by a sound jurisprudential rationale, the Court must be seen as rewriting Rule 803(6), thereby improperly blending its nonadjudicatory authority to promulgate rules in its capacity as the Maine Supreme Judicial Court with its adjudicatory authority, when sitting as the Law Court, to consider appeals. For these reasons, I respectfully dissent.

[¶33] In this opinion, I will first review Maine's governing law that the Court now abandons and discuss the reasons why that law should remain controlling authority in Maine courts. Second, I will explain the basis for my conclusion that the remaining rationale for the Court's decision wrongly strays into its discrete regulatory rulemaking function.

A.      Maine's Law on Integrated Business Records

1.      Maine's Case Law

[¶34]  The essential issue presented in this case focuses on the showing that, pursuant to Maine Rule of Evidence 803(6),[10] must be made by the proponent of an integrated business record—a document created, maintained, and handled by one entity and then transferred to and held by a second entity—for the record to be admitted in evidence.  The particular record at issue here is a notice of default and right to cure purportedly mailed by the law firm engaged by the mortgage servicer to the mortgagors, Danielle Shone and Michael Buck.

---

[10]  In its current formulation, Maine Rule of Evidence 803(6) creates an exception to the general exclusion of hearsay evidence and allows the court to admit a business record, i.e., a "[r]ecord[] of a regularly conducted activity," if the following criteria are satisfied:

> **(A)** The record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> **(B)** The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** Making the record was a regular practice of that activity;
>
> **(D)** All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and
>
> **(E)** The opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

22

[¶35]  In its opinion, the Court states that an integrated business record is admissible pursuant to Rule 803(6) if the proponent presents, as a foundational predicate, testimony from a witness, who need not have personal knowledge of the originating entity's record-related practices, that the receiving entity merely integrated, verified, and relied on the document. Court's Opinion ¶ 30.  Over the course of nearly the past decade, however, we have consistently and explicitly articulated two categorical foundational elements for an integrated business record, which, as I will discuss below, are very different from the elements that the Court prescribes today.  First, our case law establishes that the proponent of an integrated business record must demonstrate that the record-related protocols of *both* the originating and receiving entities meet the requirements of Rule 803(6)(A)-(C), which set specific evidentiary standards for when the document must have been created, how it was maintained, and whether those business practices were routine. And second, to be a "qualified witness" within the meaning of Rule 803(6)(D), the foundational witness must have personal knowledge about those protocols maintained by each entity.

[¶36]  It is manifest that the standard that the Court now adopts is materially different from the criteria prescribed in controlling Maine case law.

A review of those cases demonstrates that our articulation of the evidentiary standards was not, as the Court seems to suggest, unintentional or inadvertent. Indeed, the clear and explicit language we used to frame those requirements demonstrates that, in those cases, we meant what we said.

[¶37]  The line of cases defining our current jurisprudence began no later than our 2011 opinion in *Beneficial Maine Inc. v. Carter*, 2011 ME 77, 25 A.3d 96,[11] which addressed Rule 803(6) in its then-existing formulation.[12]  There, we stated that for an integrated business record to be admissible, the proponent

---

[11]  The articulation of our current standard arguably had its genesis even earlier, in *State v. Radley*, where we stated, "To permit the State to proffer the [integrated business] records . . . through the testimony of a witness employed by an entirely different organization, simply because her employer relied on that organization's records in its own business dealings, is wholly unsupported by rule or law."  2002 ME 150, ¶ 16, 804 A.2d 1127.  We further stated that, instead, the proponent must demonstrate through a knowledgeable witness that the upstream entity created, maintained, and transmitted the record in a way that satisfied the requirements now found in Rule 803(6)(A)-(C). *Radley*, 2002 ME 150, ¶ 16, 804 A.2d 1127.  These are the criteria for the admissibility of an integrated business record that we again articulated beginning nine years later in *Beneficial Maine Inc. v. Carter*, 2011 ME 77, 25 A.3d 96.  Despite the analysis contained in *Radley*, however, for the reasons I discuss below, *see infra* n.14, that opinion may not constitute a full and clear demarcation from the evidentiary standard described in *Northeast Bank & Trust Co. v. Soley*, 481 A.2d 1123, 1127 (Me. 1984)—the standard to which the Court now returns.  Rather, that change in our law was more definitively established in *Carter*.

[12]  The Rule then stated in pertinent part that a business record was admissible if the record was

> "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business, and if it was the regular practice of that business to make the . . . record . . . , all as shown by the testimony of the custodian or other qualified witness, . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

*Carter*, 2011 ME 77, ¶ 12 n.5, 25 A.3d 96 (quoting M.R. Evid. 803(6) (Tower 2010)).  As I discuss in the text, *infra* ¶¶ 39, 48-51, the current version of the Rule is substantively the same as the formulation of the Rule discussed in *Carter*.

24

must demonstrate that the originating entity routinely used specified protocols to create the business record, maintain it, and transmit it to the receiving entity, all in a way that, in the end, is sufficient to allow the receiving entity to rely on it. *Id.* ¶¶ 13-14. Thus, although, as the Court states today, Court's Opinion ¶ 9, reliability generally is germane to the evidentiary framework, there is more to it than that because, as we stated in *Carter* and subsequent cases described below, the rule still requires foundational evidence of certain specific historical circumstances, which could then form the basis to allow some resulting assurance that the information in the record is reliable. We also stated in *Carter* that although the foundational witness need not be an employee of the originating entity, that witness must—as the rule explicitly requires—be "qualified," which means that the witness must "demonstrate knowledge" of the originating entity's specific record-related practices now described in Rule 803(6)(A)-(C).[13] 2011 ME 77, ¶¶ 13-14, 25 A.3d 96.

---

[13] The Court asserts that, because *Carter* stated that the witness need not be an employee of the originating entity, our opinion in that case "endorsed the integrated records approach" that had been set out in *Soley*, 481 A.2d at 1127. Court's Opinion ¶ 19. For the reasons I explain in the text, however, *Carter* superseded *Soley* by articulating materially different criteria for an integrated business record to be admissible. Additionally, we have never held that, to be "qualified" within the meaning of Rule 803(6)(D), the foundational witness must be an employee of the entity whose record-related practices are being described in that witness's testimony. The test for whether a witness is "qualified" rests on the nature and source of the witness's knowledge, not the witness's employment or capacity. *See M & T Bank v. Plaisted*, 2018 ME 121, ¶¶ 7-12, 24, 192 A.3d 601; *Deutsche Bank Nat'l Tr. Co. v. Eddins*, 2018 ME 47, ¶ 12, 182 A.3d 1241; *KeyBank Nat'l Ass'n v. Est. of Quint*, 2017 ME 237,

[¶38]  As the Court correctly notes, Court's Opinion ¶ 20, those standards heightened the requirements for the admissibility of integrated business records as set out in our previous case law, which had allowed the trial court to admit such evidence when there were merely "indicia of [the record's] reliability"—something that could be demonstrated by as little as foundational evidence that the receiving entity had integrated the record into its own records and relied on it.  *Ne. Bank & Tr. Co. v. Soley*, 481 A.2d 1123, 1127 (Me. 1984).[14]  *Carter*'s clear and explicit articulation of more exacting criteria

---

¶ 15, 176 A.3d 717; *Carter*, 2011 ME 77, ¶¶ 13-14, 25 A.3d 96.  Thus, the Court's attempt to equate the analyses in *Carter* and *Soley* is a curious one.

[14]  As I state above, *see supra* n.11, in *Radley* we at least began our move away from the approach described in *Soley* a full nine years before *Carter.*  At issue in *Radley* was the admissibility of a report of a funds transfer offered by the State.  2002 ME 150, ¶ 5, 804 A.2d 1127.  The foundational witness, who was an employee of the receiving entity, testified that her office had received the report from another entity and relied on it—a foundation that was sufficient pursuant to *Soley*.  *Id.*  We held, however, that the witness was not "qualified" within the meaning of Rule 803(6) because she had no knowledge of the manner by which the sending entity created, maintained, or transmitted the report to the receiving entity.  *Id.* ¶ 15.  Additionally, at trial the proponent—the State—had failed to present any evidence of whether the record was created at or near the time of the event it described, whether the record was created by someone with knowledge of the event, and whether the entity had a regular practice of creating such a record.  *Id.* ¶ 16.  These are the criteria for the admissibility of an integrated business record that we articulated nine years later in *Carter*.  Because in *Radley* the State had failed to develop a foundation, based on the testimony of a witness with knowledge, that the sending entity's record-related practices met the requirements that are now found in Rule 803(6)(A)-(C), we concluded that the trial court erred by admitting the record in evidence.  *Id.*

In a footnote in *Radley*, however, we did bring into question the scope of the holding and its effect on *Soley*.  *Id.* ¶ 17 n.2, 804 A.2d 1127.  We addressed the State's contention that admission of the integrated business record was a "natural extension" of *Soley* because the foundational witness had testified that the receiving entity received and relied on it.  *Id.*  We rejected that entreaty because the report provided information that had been reported from yet another underlying source and because it described the defendant's conduct rather than "objective and verifiable" information such as was involved in *Soley* (information about interest rates).  *Id.*

for admissibility, however, can leave no doubt that we intended to implement those more refined and disciplined standards, which also, unlike those described in *Soley*, track the requirements as they were plainly stated in the rule.

[¶39]  The entire body of the Maine Rules of Evidence was restyled effective at the beginning of 2015, more than three years after we issued our decision in *Carter*.  *See* 2014 Me. Rules 15 (effective Jan. 1, 2015).  The only change to Rule 803(6) created by the restyling was the helpful separation of the rule's foundational elements into discrete subparts.  *Cf.* M.R. Evid. 803(6) (Tower 2010).  When the Advisory Committee on the Maine Rules of Evidence presented the proposed restyled rules to the Supreme Judicial Court, the Committee made explicit that the purpose of the restyling effort was to make the language contained in the rules clearer while still "preserv[ing] the substance of the respective rules without change."  Advisory Committee on the Maine Rules of Evidence Note: Proposed Restyled Rules of Evidence [2014].

---

Therefore, at the very least, nine years before *Carter*, our decision in *Radley* signaled a limitation on the holding in *Soley* by requiring the proponent to present testimony from a knowledgeable foundational witness that the practices of the originating entity met the requirements now set out in subparts A through C of Rule 803(6).  But *Radley* did not make a clean break from *Soley* because of the discussion in the footnote that appears to have distinguished *Soley* in part based on differences in the facts.  *Radley*, 2002 ME 150, ¶ 17 n.2, 804 A.2d 1127.  I therefore treat *Carter* as the analytical divide even though *Radley* certainly presaged that development by bringing *Soley* into considerable question that much earlier.

This means that, although having occasion to do so through its comprehensive review of the rules, the Advisory Committee did not recommend a change from the way we had construed Rule 803(6) several years earlier in *Carter*. Further, our consideration of the proposed restyled body of rules also presented *us* with the opportunity to rewrite or otherwise clarify Rule 803(6) in a way that would alter *Carter*'s standards for the admissibility of integrated business records and restore *Soley*'s. If our analysis in *Carter* had been mistaken, as the Court concludes today, we could and presumably would have done so. But we did not, and so the substance of Rule 803(6) remained the same, and *Carter* remained good law.

[¶40] When we first considered and applied restyled Rule 803(6), in *KeyBank National Ass'n v. Estate of Quint*, we quoted directly from *Carter* and reiterated the requirement for the admissibility of integrated business records that the foundational witness, if an employee of only the receiving entity, must have the requisite knowledge of the regular practices of *both* the originating and receiving entities: "[a] qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge." 2017 ME 237, ¶ 15, 176 A.3d 717 (quotation marks omitted). But the foundational witness need not be an

employee of the originating entity, in which case the witness must have "sufficient knowledge of *both businesses'* regular practices" in a measure that demonstrates the reliability and trustworthiness of the information contained in the document. *Id.* (quotation marks omitted). We affirmed the judgment entered for the mortgagor because the trial court had correctly concluded that the mortgagee did not develop foundational evidence that the originating entity had engaged in the regular business practices meeting the requirements of the rule as explained in *Carter*. *Id.* ¶ 19. Further, true to the provisions of the rule and the Advisory Committee's explanation of the proposed restyled rules, we viewed restyled Rule 803(6) as containing the same substantive requirements as the previous version. *See id.* ¶¶ 14-15. In other words, we reaffirmed the *Carter* analysis, and that case therefore again remained good law.

[¶41] Similarly, in *Deutsche Bank National Trust Co. v. Eddins*, another foreclosure case involving an integrated business record where the restyled version of Rule 803(6) was applicable, we again stated that, for the document to be admissible, the foundational witness must have "adequate knowledge of the processes used by the entity that created and preserved the document." 2018 ME 47, ¶ 12, 182 A.3d 1241. We also stated explicitly that "[t]he incorporation of one entity's record into the records of the receiving entity is

*not* a sufficient basis, by itself, for the admissibility of that record." *Id.* (emphasis added).

[¶42]  The most recent case in which we considered the admissibility of integrated business records is *M & T Bank v. Plaisted*, 2018 ME 121, 192 A.3d 601.  There, the foundational witness was an employee of the originating entity and was familiar with that business's record-related practices, but we concluded that, because he had no "personal knowledge" of the receiving entity's business practices, the integrated business record in the possession of the receiving entity was not admissible.  *Id.* ¶¶ 7-12, 24.  This again demonstrates that the proponent's foundation must include testimony from a witness with firsthand knowledge that the record-related practices of each entity satisfy the requirements of Rule 803(6)(A)-(C).

[¶43]  These cases—decided over the course of nearly a decade and perhaps longer, *see supra* nn.11, 14, and all decided unanimously and without doctrinal interruption—establish the standards that govern the admissibility of integrated business records pursuant to Rule 803(6).  The cases confirm that the proponent must present evidence that the practices of both the originating and receiving entities meet the specific criteria set out in subparts A through C; an attempt to show reliability in some other way falls short.  The cases also

require that the foundation emanate from one or more witnesses who, to be "qualified" within the meaning of Rule 803(6)(D), must have actual familiarity with the processes used by both the originating and receiving entities for creating, handling, and retaining the business record at issue.

[¶44]  In contrast, the standard announced today by the Court allows admission of an integrated business record on foundational evidence that the receiving entity integrated, verified, and relied on the document it received from the originating entity.  Further, as the Court describes the standard, the receiving entity can "verify" the record when that entity "simply . . . establish[es] or confirm[s] the accuracy of the record *in some way*."  Court's Opinion ¶ 11 (emphasis added).  That standard—particularly the highly nonspecific criterion for how the receiving entity may verify a record's accuracy—is entirely at odds with, and is insufficient to satisfy, the plain language of Rule 803(6) and our interpretive case law since at least 2011.  Despite that legal authority and the clear requirements of Rule 803(6)(A)-(D), based on the Court's decision today, no longer will the proponent be required to present evidence, based on the testimony of a "qualified witness" as we have construed that term, *see Carter*, 2011 ME 77, ¶¶ 13-14, 25 A.3d 96, that the record was made at the time or near the time of the recorded event by someone

with knowledge of the event, that the document was kept in the course of the originating business's regularly conducted activity, and that creating the record was among the originating business's regular practices.

[¶45] Notwithstanding the interpretation of Rule 803(6) it announces today, the Court states that the requirements of Rule 803(6) will continue to govern the admissibility of integrated business records and that the proponent will still be required to present foundational evidence from which it may be "inferred" that the originating entity's practices satisfy the predicate elements in the Rule. Court's Opinion ¶ 23 n.7. This assertion is belied by the very evidentiary standard the Court adopts here. For an integrated business record to be admissible from now on, the proponent will need only present evidence that the downstream entity received, verified, and relied on the document created by the upstream entity. As I have discussed above, however, Rule 803(6) prescribes standards that are different and more exacting. The three steps to be taken by the receiving entity that the Court finds to be cumulatively sufficient—receipt, verification, and reliance—do not bear any meaningful or predictable relationship to the particularized requirements of the Rule, which center on a showing of specific practices used by the originating entity in creating, maintaining, and transmitting the document. *See* M.R.

Evid. 803(6)(A)-(C). Despite the Court's attempts to minimize or even erase the differences, the requirements prescribed by the Rule in fact are qualitatively distinct from the more tolerant criteria the Court adopts today.

[¶46] The Court also asserts several times that within our current jurisprudence there is a "conflict" regarding the admissibility of integrated business records. Court's Opinion ¶¶ 1, 23, 24. I submit, with respect, that the Court is wrong. Our decisions beginning no later than with the 2011 opinion in *Carter* establish a consistent and clear set of standards for the admissibility of integrated business records. That the evidentiary criteria articulated in those cases may differ from those set out in older cases, such as *Soley*, does not create an ongoing conflict. Rather, *Carter* and the cases that follow represent a succession by which previous law has been superseded. Further, the Court describes *Soley* as "good law" and states that there was no indication in *Carter* of an intention to depart from *Soley.* Court's Opinion ¶¶ 20, 23. That is plainly not the case, as is made clear by our analysis and discussion of the issue in our opinions beginning with *Carter*—cases that the Court now effectively must overrule to reinstate pre-*Carter* jurisprudence.[15]

---

[15] Not once in its opinion does the Court directly state that it is overturning the line of cases beginning with *Carter*, although that is clearly what the Court is doing.

[¶47]  In doing so, the Court writes off a decade's or more worth of our decisions, beginning with *Carter* (if not *State v. Radley*, 2002 ME 150, 804 A.2d 1127, *see infra* nn.11, 14) and continuing through *Plaisted*, because, the Court suggests, we did not pay enough attention to the admissibility standards contained in earlier decisions and therefore decided those cases based on oversight and inadvertence. *See* Court's Opinion ¶¶ 20-22.  That view, however, cannot account for our explicit articulation of pertinent evidentiary standards in the cases beginning with *Carter,* and, regrettably, it reflects a diminution of the weight and significance that should be attributed to our decision-making process, which, although certainly not infallible, is exercised with care, and with sensitivity to and appreciation for our role as the court of last resort.

2.     2018 Amendment to Rule 803(6)

[¶48]  The Bank and several of its supporting amici place significance on a 2018 amendment to Rule 803(6)(E), 2018 Me. Rules 09 § 2 (effective Aug. 1, 2018), to support the conclusion that we should now interpret the rule as do other jurisdictions, including specifically the federal courts as exemplified in *U.S. Bank Trust, N.A. v. Jones*, 925 F.3d 534 (1st Cir. 2019).[16]  I disagree.

---

[16]  In that case, the First Circuit stated that there is no material difference between the Maine and federal approaches to the admissibility of integrated business records. *U.S. Bank Tr., N.A. v. Jones*, 925 F.3d 534, 539 & n.1 (1st Cir. 2019).  I respectfully submit that this is not so because the analysis described in *Jones* tolerates the absence of any personal knowledge by the witness about the

34

[¶49] The modest change implemented by the 2018 amendment does not have such a radical effect. The amendment did nothing more than fill a gap in the allocation of the burden of proof on a limited aspect of the rule, by providing that the burden to demonstrate a lack of trustworthiness sufficient to defeat admission of the proffered document rests with the opponent, thereby clarifying that the proponent is not required to demonstrate the absence of indicia of untrustworthiness.[17] *See* M.R. Evid. 803(6)(E). The amendment did not introduce the general consideration of a business record's untrustworthiness. That factor was already present in the prior formulation of the rule. *See* M.R. Evid. 803(6)(E) (Tower 2017). The amendment also did not touch the specific predicate criteria for admission of a business record contained in subparts A through C: whether the document was made at or near the time of the recorded event by, or with information from, someone with

originating entity's records practices and does not require the proponent to present foundational evidence that the record-related practices of the originating entity meet the requirements of Rule 803(6)(A)-(C). *Jones*, 925 F.3d at 538. These principles run contrary to Maine law, as is shown by my review of our case law. Indeed, in now abandoning Maine's current case law and adopting the framework described in *Jones*, the Court confirms the existence of the differences between the two approaches.

17 As the result of the 2018 amendment, Rule 803(6)(E) now provides that a business record meeting the standards set out in the remaining aspects of the Rule is admissible if "[t]he opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *See* 2018 Me. Rules 09 § 2 (amending M.R. Evid. 803(6)(E)); *see also supra* n.10 (setting out the current Rule in its entirety).

knowledge; whether the record was created in the normal course; etc. Further, the amendment did not alter the basis or measure of knowledge that the foundational witness must have: the witness still must be "qualified" pursuant to Rule 803(6)(D), a concept that we had addressed and explained in our case law outlined above.

[¶50] The limited nature of the 2018 amendment is made even more apparent by the statement of the Advisory Committee on the Maine Rules of Evidence, accompanying the submission of the proposed rule amendment to the Supreme Judicial Court, that the rule change was not substantive—it would not change the factors that bear on the determination of admissibility. M.R. Evid. 803 Advisory Committee Note – August 2018. As the Advisory Committee explained, the amendment merely codified the practice that was already being followed by Maine courts and litigants. *Id.* Both this description of the amendment and the nature of the amendment itself confirm its nonsubstantive content, further undermining use of the amendment as a springboard to justify substantial substantive changes to separate components of the evidentiary standard governing the admissibility of integrated business records. To conclude that this limited amendment contributes to a wholesale revision of

the entire analysis governing integrated records reads far too much into such a narrow rule change.

[¶51]  In my view, Maine law is clear, and the Court's efforts to tease out vestiges of pre-*Carter* jurisprudence from current case law, *see* Court's Opinion ¶¶ 19, 22, do not change that fact.  The proponent of an integrated business record must demonstrate, through testimony of a witness with knowledge, that the originating and receiving entities each engaged in record-related practices that satisfy the requirements of Rule 803(6)(A)-(C).  Contrary to the Court's conclusion, the receiving entity's mere integration, verification, and reliance on the originating entity's record is not sufficient to render the record admissible. *See supra* ¶¶ 44-45.

[¶52]   At the trial in this action, the dispositive issue became the admissibility of a notice of default and right to cure ostensibly created and issued by the law firm engaged by the servicer of the mortgage.  *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (stating that proof of mailing or other authorized method of service is one of the elements of a foreclosure case); 14 M.R.S. § 6111(3) (2018), *repealed and replaced by* P.L. 2019, ch. 361 §§ 1, 2 (effective Sept. 19, 2019) (codified at 14 M.R.S. § 6111(2-A) (2020)). The Bank developed no evidence that the foundational witness, who was an

employee of the servicer, oversaw, reviewed, or had any familiarity with the law firm's internal processes for creating and mailing default notices, and the witness did not describe any such processes themselves, including the mailing process.  As the Court itself recognizes, Court's Opinion ¶ 29, and contrary to the Bank's contention on appeal, the trial court correctly determined, based on that record and the current, controlling Maine law, that the Bank had not qualified the notice as an admissible integrated business record.

[¶53]  Because the court committed no error when it excluded the notice, the judgment should be affirmed, unless our cases, beginning with *Carter*, establishing the standards for the admissibility of integrated business records should be overturned.  This question directly implicates principles of *stare decisis*.

3.      *Stare Decisis*[18]

[¶54]  An analytical cornerstone of jurisprudence, the doctrine of *stare decisis* calls upon the courts to respect legal precedent in order to provide

---

[18]  It bears note that the Bank itself has not explicitly asserted that current Maine case law should be overturned.  In fact, while this appeal was pending *we* raised the issue and invited the parties and amici to submit briefs on the question of whether, in light of the First Circuit's decision in *Jones*, we should change the way we apply Rule 803(6) to integrated business records.  In its supplemental brief, the Bank then asserted that adoption of *Jones* would actually clarify rather than change Maine's current law on integrated business records.  Nonetheless, the Bank also argued that the trial court incorrectly applied Maine's current law to the evidence, thereby making it unduly difficult for a proponent to achieve admission of integrated business records—a particular challenge, presumably, for mortgagees given that sequential ownership and management of mortgages is common.  *See*

"stability to the law and enable[] the public to place reasonable reliance on judicial decisions affecting important matters. Even when we have a certain unease with the analysis of a prior decision, we do not overrule the decision without a compelling and sound justification." *McGarvey v. Whittredge*, 2011 ME 97, ¶ 63, 28 A.3d 620 (Levy, J.) (quotation marks omitted). As the Chief Justice of the United States has recently stated, the principle of *stare decisis* "is grounded in a basic humility that recognizes today's legal issues are often not so different from the questions of yesterday and that we are not the first ones to try to answer them. Because the private stock of reason . . . in each [person] is small, . . . individuals would do better to avail themselves of the general bank and capital of nations and of ages." *June Med. Servs., L.L.C. v. Russo*, --- U.S. ---, ---, 140 S. Ct. 2103, 2134 (2020) (Roberts, C.J., concurring) (quotation marks omitted).

[¶55] To be sure, respect for precedent is not an absolute bar that ossifies obsolete judicial reasoning and conclusions. *Dyer v. Me. Drilling & Blasting, Inc.*, 2009 ME 126, ¶ 28, 984 A.2d 210; *MacDonald v. MacDonald*, 412 A.2d 71, 74

---

*Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶ 13, 122 A.3d 947. To the contrary, the trial court's analysis was entirely faithful to Maine's current evidentiary standards. Consequently, the Bank's complaint about the effect of the court's ruling can be seen, at most, as a de facto challenge to our present case law governing Rule 803(6), even though the Court has now proceeded as if the Bank had asked us more directly to overrule our precedent.

(Me. 1980) (stating that stare decisis does not require "judges of the present, who like their predecessors cannot avoid acting when called upon, . . . to act as captives of the judges of the past, restrained without power to break even those bonds so withered by the changes of time that at the slightest touch they would crumble"). Nonetheless, in order to promote predictability and stability in the law and to avoid arbitrariness, "appellate courts proceed with great care before overruling a prior decision, and do so only after careful analysis and based on a compelling reason. We do not disturb a settled point of law unless the prevailing precedent lacks vitality and the capacity to serve the interests of justice." *State v. Bromiley*, 2009 ME 110, ¶ 6, 983 A.2d 1068 (citation omitted) (quotation marks omitted).

[¶56] Considerations relevant to whether precedent should be cast aside include whether the existing approach has "fallen into jurisprudential disrepute and is disapproved in better-considered recent cases and in the authoritative scholarly writings," *Dyer*, 2009 ME 126, ¶ 28, 984 A.2d 210 (quotation marks omitted); whether "the passage of time and changes in conditions" call for a reassessment of existing law to the point of "reaching a different result," *Est. of Galipeau v. State Farm Mut. Auto. Ins. Co.*, 2016 ME 28, ¶ 15, 132 A.3d 1190 (quotation marks omitted); and the administrability of the

law at issue, *June Med. Servs.*, --- U.S. at ---, 140 S. Ct. at 2134 (Roberts, C.J., concurring) (citing *Janus v. AFSCME, Council 31*, --- U.S. ---, 138 S. Ct. 2448, 2478-79 (2018)).

[¶57]  This case does not present a justification for abandoning current Maine law governing the admissibility of integrated business records.  We suggested those evidentiary standards as early as 2009 in *State v. Radley*, 2002 ME 150, 804 A.2d 1127, *see supra* nn.11, 14, and we have articulated them clearly and consistently since 2011 and as recently as 2018—hardly an antiquated body of law.  Our case law has not become obsolete or fallen into disrepute over time because of advances in legal thought.  *Cf. Dyer*, 2009 ME 126, ¶ 18, 984 A.2d 210 (concluding that developments in the law over the previous half-century warranted changes in applicable Maine law).  This is also not a situation where our current law creates such unfairness as to justify rejection of recent precedent.  *Cf. Myrick v. James*, 444 A.2d 987, 999 (Me. 1982), *superseded by statute on other grounds as stated in Sears, Roebuck & Co. v. State Tax Assessor*, 2012 ME 110, ¶ 1, 52 A.3d 941 (overturning Maine precedent that we determined was "harsh and unjust" and "counterproductive to the achievement of any principled conception of fair and even-handed justice").  Further, there is no significant difficulty in administering—i.e., applying—the

rule (although, as is evident from the cases I review above, mortgagees sometimes have difficulty at trial meeting the standards prescribed in Rule 803(6)).

[¶58] The divergence between Maine law and the law of other jurisdictions, exemplified by *Jones*, is not a new circumstance that would justify departing from our precedents. *Jones* relies on several federal cases going as far back as 1992. 925 F.3d at 537 (*citing United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992)). And here the Court itself cites to federal and state appellate court opinions that were issued decades ago. *See* Court's Opinion ¶ 13. We developed our modern-day standards for the admissibility of integrated business records in our decisions beginning no later than *Carter* in 2011, well after some other courts had put their less stringent model in place. This means that the approach described in *Jones* and elsewhere was available for us to consider and possibly adopt throughout the entire time that we have been articulating our different standard for the admission of integrated business records. Nonetheless, we took a different route.

[¶59] Finally, the Court states that there is benefit to interpreting Maine's rule uniformly with the construction found in other jurisdictions, in part to discourage forum-shopping. *See* Court's Opinion ¶ 25. When the Maine Rules

of Evidence were restyled effective in 2015, however, the Advisory Committee on the Maine Rules of Evidence presented the proposed amendments to the Supreme Judicial Court with the explicit explanation that "[r]estyled Rule 803 preserves the substantive differences between the Maine and the Federal Rules." M.R. Evid. 803 Maine Restyling Note [November 2014]. This makes clear that the restyled rules were not proposed to us in order to create that uniformity—and in fact they were intended to preserve the independence of our own jurisprudence. Since then, we have done nothing to call that framework into question. Based on this history, homogeneity between Maine law and the law of other jurisdictions, while not without some ancillary value, is nonetheless not an objective to be pursued for its own sake.[19]

[¶60] The question here is not whether the approach to integrated business records embodied in *Jones* is reasonable. Rather, the issue now before the Court is whether *Maine*'s current case law governing Rule 803(6) is wrong. It is not. As I have discussed, our case law going back at least as far as 2011 could not be clearer in requiring a greater foundational showing than *Jones* and

---

[19] Another example of the lack of symmetry between Maine's rules of evidence and the federal rules is that the latter include a residual hearsay exception. *See* Fed. R. Evid. 807. Maine's rules do not. *See* M.R. Evid. 803 Maine Restyling Note [November 2014]; M.R. Evid. 803 Advisers' Note to former M.R. Evid. 803 (February 2, 1976).

the courts of other jurisdictions insist on, but that divergence does not prove Maine's criteria to be incorrect; the existence of one approach does not prove the other wrong. Rather, the difference in approaches simply represents different levels of sensitivity to the measure of reliability that must characterize an integrated business record to allow its admission in evidence. Additionally, Maine's current approach has the benefit of faithfulness to the language of Rule 803(6) itself. What the Court does today is simply to adopt one approach, which is described in *Jones* and has existed all along, as the replacement for another, which is described in *Carter* and is different but in no way incorrect. In my view, to jettison a well-established and perfectly appropriate and defensible legal standard established in Maine's authoritative case law does damage to the safeguard and stability of legal precedent achieved through adherence to the basic principle of *stare decisis*.

[¶61] Given the fundamental importance of respecting and following precedent, and the absence of any rationale that constitutes a "compelling" justification for departing from settled and well-established law, *Bromiley*, 2009 ME 110, ¶ 6, 983 A.2d 1068, we should not overrule the case

44

law establishing our current jurisprudence on the admissibility of integrated business records.[20]

B.    The Court's Rulemaking Authority

[¶62]  For the reasons I have explained, there does not exist a sound jurisprudential basis for the Court's decision to change its construction of Rule 803(6) as applicable to integrated business records.  As a result, today's decision must be viewed as a de facto change to the meaning and content of the rule itself—something the Court may do pursuant only to its statutory authority to promulgate the rules that govern judicial proceedings, not in exercise of its appellate authority.  *See* 4 M.R.S. §§ 1, 8, 9-A, 51 (2020).

[¶63]  By concluding that the proponent need present evidence only that the receiving entity received, verified, and relied on a record generated by the originating entity, *see* Court's Opinion ¶ 30, the Court effectively eliminates the specific requirements imposed by Rule 803(6)(A)-(C) as they apply to

---

[20]  To the extent that the Court concludes—without the benefit of any advocacy on the point, *see supra* n.18, and while simultaneously stating that *Carter* is entitled to respect as precedent—that *Carter* and the cases that followed were themselves decided in contravention of principles of *stare decisis*, Court's Opinion ¶ 23 & n.7, the Court collaterally attacks those decisions.  This leaves one to wonder about the consequences of the application of Rule 803(6) to the judgments addressed in those cases, and the many additional judgments that have been issued in the trial courts based on our current law governing the admissibility of integrated business records, not only in foreclosure cases but in all other types of cases where such records were material.  Additionally, the fact remains that our current jurisprudence *is* the law, so the question presented here is whether we should now reject *that* authority.

integrated business records, namely, that the proponent must present foundational evidence that the record "was made at or near the time by—or from information transmitted by—someone with knowledge," that it "was kept in the course of a regularly conducted activity of a business," and that "[m]aking the record was a regular practice of that activity." As I have discussed above, *supra* ¶¶ 44-45, the rule, as the Court now interprets it, therefore will now allow a materially lesser foundational showing than is required by the plain terms of the rule for a proffered integrated business document to become admissible in evidence.

[¶64] The Court describes this as an integrated records "method," which it bases on a generalized notion of reliability. Court's Opinion ¶¶ 8-10. No such "method" exists within Rule 803(6), however. As written, the specific requirements of the rule, including those set out in subparts A through C, apply irrespective of whether the record is that of a single entity or is an integrated record. By construing the rule as it does, the Court effectively exempts integrated business records from the particularized foundational predicate set out in subparts A through C and thereby rewrites the rule by eliminating those requirements for such records to be admitted in evidence.[21] *See Radley*, 2002

---

[21] Although the Court denies that it is rewriting Rule 803(6) because it is simply returning to our interpretation of the Rule from the *Soley* era, Court's Opinion ¶ 23 & n.7, the fact remains that the

ME 150, ¶ 17, 804 A.2d 1127 (stating that the erroneous admission of an integrated business record, where it is not supported by the foundational requirements of Rule 803(6), cannot be transformed into a correct ruling because, unlike the federal rules, *see* Fed. R. Evid. 807, the Maine Rules of Evidence do not include a residual or "catch-all" exception to the hearsay rule, which might allow the record to be admissible).

[¶65]  When promulgating or amending rules of court, the Court invokes and exercises authority in its capacity as the Supreme Judicial Court.  *See* 4 M.R.S. §§ 1, 8, 9-A, 51.  That authority is separate and mutually exclusive from the authority we exercise when sitting as the Law Court, an appellate body. *Compare* 4 M.R.S. § 8 (rulemaking authority), *with* 4 M.R.S. §§ 51, 57 (2020) (appellate authority); *see also State v. Doucette*, 544 A.2d 1290, 1294 (Me. 1988).  Here, by effectively rewriting the way Rule 803(6) applies to integrated business records, the Court is improperly exercising its regulatory rulemaking powers in an adjudicatory context.  *See Conservatorship of Emma*, 2017 ME 1, ¶¶ 1, 10, 153 A.3d 102 (declining to answer a question reported by the Kennebec County Probate Court in part because questions "of policy, with

_____

construction of the Rule now embraced by the Court changes the substance and structure of the Rule as established by our current controlling jurisprudence.  This amounts to an amendment of the Rule itself.

long-ranging and far-reaching implications" are properly answered not through adjudication but through the rulemaking process in which the related issues "can be addressed together in an open forum").

[¶66] I have no quarrel with the suggestion that it may be beneficial to reexamine the way Rule 803(6) should be applied to integrated business records, at least in foreclosure cases. The Bank and its allied amici assert that Rule 803(6), as we have construed it since 2011, imposes an unfair and unnecessary obstacle to admitting those records, which can contain necessary aspects of proof in foreclosure cases where mortgages are often transferred from one entity to the next and the servicing of a single mortgage can also change hands. *See Plaisted*, 2018 ME 121, ¶ 1, 192 A.3d 601 (noting the challenges faced by mortgagees in proving a foreclosure case because of the industry's "practice of securitization, spawning a byzantine mass of assignments, transfers, and documentation" (quotation marks omitted)). On the other side, several amici in support of Shone and Buck's position point to a checkered track record in the efforts of mortgagees to present sufficient and reliable information about the history of mortgages on which they have sought to foreclose, and those amici point to the incentive that mortgagees, servicers, and others involved in administering mortgages may have to simply adopt,

verify, and rely on one another's records. *See id.* ¶ 2 ("The law, the rules of evidence, and court processes have not become more complicated in these matters. Applying established law, however, has become more problematic as courts address the problems the financial services industry has created for itself." (quotation marks omitted)); *see also HSBC Mortg. Servs., Inc. v. Murphy*, 2011 ME 59, ¶ 15 & n.8, 19 A.3d 815.

[¶67] Although this is a discussion that may be well worth having, it must occur in a forum other than this appeal, where we are called upon to interpret and apply Rule 803(6) as it exists. The proper vehicle to address the efficacy of the current Rule to serve its purposes effectively in some or all contexts is through the Advisory Committee on the Maine Rules of Evidence or other interested persons or entities, and ultimately within the Supreme Judicial Court, exercising its rulemaking authority—a deliberative process that likely would require consideration of broad empirical industry-wide practices based on information that goes well beyond the present record. For the Court to de facto rewrite the rule in the context of this appeal is an improper exercise of its rulemaking authority in an adjudicatory proceeding.

C.    Conclusion

[¶68]  The trial court correctly applied Rule 803(6) and committed no error when it excluded the notice of default and right to cure, directly resulting in the entry of judgment for mortgagors Danielle Shone and Michael Buck. Further, there is no proper persuasive basis for casting aside our clear and well-established jurisprudence governing the admissibility of integrated business records.  The judgment should be affirmed.

---

Santo Longo, Esq., Bendett & McHugh, P.C., Portland, and William A. Fogel, Esq. (orally), San Diego, California, for appellant the Bank of New York Mellon

Mark A. Kearns, Esq. (orally), and Mark L. Randall, Esq., Portland, for appellees Michael Buck and Danielle Shone

Jeremy Kamras, Esq., Arnold & Porter Kay Scholer LLP, San Francisco, California, for amicus curiae Federal Housing Finance Agency

Andrea Bopp Stark, Esq., National Consumer Law Center, Boston, Massachusetts, for amicus curiae National Consumer Law Center

Daniel L. Cummings, Esq., and Michael T. Devine, Esq., Norman, Hanson & Detroy, LLC, Portland, for amicus curie Maine Credit Union League

Diane Cipollone, Esq., Yarmouth, for amici curiae National Association of Consumer Advocates, Marc Dann, the Dann Law Firm, James Sturdevant, the Sturdevant Law Firm, Phillip Robinson, and the Consumer Law Center LLC

Frank D'Alessandro, Esq., Augusta, for amicus curiae Maine Equal Justice

50

Jonathan E. Selkowitz, Esq., Pine Tree Legal Assistance, Inc., Portland, for amicus curiae Pine Tree Legal Assistance, Inc.

Catherine R. Connors, Esq., John J. Aromando, Esq., and Sara A. Murphy, Esq., Pierce Atwood LLP, Portland, for amicus curiae The Maine Bankers Association

Brett L. Messinger, Esq., and Elizabeth M. Lacombe, Esq., Portland, for amicus curiae PHH Mortgage Corporation

Kelly W. McDonald, Esq., Murray, Plumb & Murray, Portland, for amicus curiae Full Disclosure, LLC

Thomas A. Cox, Esq., Portland, for amicus curiae Maine Attorneys Saving Homes

Gerald F. Petruccelli, amicus curiae pro se

Cumberland County Superior Court docket number RE-2015-116
FOR CLERK REFERENCE ONLY